IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2004

## STATE OF TENNESSEE v. JEREMY LEE MILLER

**Direct Appeal from the Circuit Court for Lawrence County**
**No. 23933      Stella L. Hargrove, Judge**

---

**No. M2004-00043-CCA-R3-CD - Filed March 15, 2005**

---

Upon entering a "best interest" guilty plea, the Defendant, Jeremy Miller, was convicted of attempted aggravated child abuse, a Class B felony. The trial court sentenced the Defendant as a Range I, standard offender to eleven years in the Department of Correction. On appeal, the Defendant raises the issue of whether the trial court erred in ordering an excessive sentence by: (1) improperly weighing enhancement and mitigating factors; and (2) denying alternative sentencing. We modify the sentence of the trial court to comply with the dictates of Blakely v. Washington, 542 U.S. ____, 124 S. Ct. 2531 (2004). We remand for the trial court to consider the Defendant's suitability for probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified;**
**Case Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Robin Farber, Columbia, Tennessee, for the appellant, Jeremy Lee Miller.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On the morning of October 28, 2002, the victim, a five-month-old infant in the care of the Defendant, was not breathing when he was brought to the emergency room of Crockett Hospital in Lawrenceburg. The victim, diagnosed to be in a life-threatening condition, was given emergency treatment and transported to Vanderbilt Hospital in Nashville. Medical personnel were able to save the victim's life, but doctors at Vanderbilt Hospital determined that the infant suffered serious

injuries, including rib and clavicle fractures as well as retinal hemorrhaging. The victim was hospitalized for one week for treatment of his injuries. Following an investigation by law enforcement officers, the Defendant was charged with aggravated child abuse.

At the time of the incident, the Defendant was living with the victim and the victim's mother, Rebecca Heupel. The Defendant was unemployed and served as the primary care-taker for the victim during the time Ms. Heupel was at work. The facts leading to the victim's injuries were a source of some confusion and dispute at the trial court hearings. The Defendant gave the following statement to investigators on October 29, 2002, the day after the incident:

> The day before I shook Austin, me and Rebecca had been not getting along to good. She told me she was going to leave me and I was upset. She went to work the next morning and told me the same thing before she left. I couldn't get Austin to take his bottle or to quit crying. He was just screaming and wouldn't stop. I shook him pretty hard. I know it hurt him and I really didn't mean to hurt him. He was crying after it happened like he was in pain and I noticed that his arms was not moving like he usually moves. He just kind of left them laying at his side like they hurt or he hurt to much to move them.

When asked to write a statement for the sentence investigation report, the Defendant gave a significantly different version of events:

> I was taking care of Austin, while his mother was at work and that morning he quit breathing. He sounded like he got choked on something. I tried everything I could to get him to breath. I shook him a couple of times but it wouldn't do any good. I tried giving him CPR but I didn't know how. We didn't have a phone so I ran next door and woke up one of our neighbors and had them to call an ambulance. The woman on the phone was trying to tell me and my neighbor how to do CPR until the ambulance got there. Austin had just been to the doctor a couple of days before that and he had an irritated throat. The doctor had him on medication. I don't know if thats what made him get choked and quit breathing, but the nurse at the hospital said his throat was swelled. Thats what was wrong with him when we carried him to the doctor a couple days earlier. I panicked when it happened. I was really scared and I didn't have any idea what to do, I never meant to hurt Austin. If I did hurt him, it was not intentional. I love Austin like he is my own son. I just didn't want anything to happen to him. I probably shouldn't have shook him. But I was scared, I couldn't think what I should do. I just wanted Austin to be OK, but I never meant to hurt him. Austin and Rebecca were my family, we were happy together and we got along real good. But I would have never done anything to hurt that baby or his mother either.

At the sentencing hearing, the Defendant testified that his first statement referred to a seperate incident that happended "two to four weeks" before the victim was rushed to the hospital on October 28, 2002.

In December of 2002, the Defendant was indicted for aggravated child abuse. See Tenn. Code Ann. § 39-15-402.[1] In September of 2003, the Defendant waived his right to a jury trial and entered an Alford[2] or "best interest" guilty plea to the reduced charge of attempted aggravated child abuse. See Tenn. Code Ann. § 39-12-107.[3] The Defendant's plea agreement stipulated that he would "go to [the] sentencing hearing as a Range I standard offender (RED 30%) for the Court to determine the length, manner and method of sentence (8-12 yrs)."

The trial court conducted a sentencing hearing in October of 2003. The victim's primary care physician, Dr. Jerry Qualls, testified that the infant had scarring in the retina of his left eye that resulted in permanent impairment to his sight. The infant also suffered from a cosmetic condition whereby the left eye drifts toward the center of the face. Dr. Qualls further testified that the infant displayed a delay in both his speech development and walking, but could not state with certainty that these delays were directly related to his injuries. The victim's mother also testified that the victim had difficulty balancing, and that the victim cried whenever in the presence of a man.

The Defendant's step-mother, father and grandmother all testified that the Defendant was good with children and cared for the victim as if he was his own child. The Defendant testified that on the morning of the incident the infant "made like a choking sound" and appeared not to be breathing. The Defendant further stated that he was scared and "shook him" only to make him breathe. He said that his statement to the investigators regarding his shaking of the victim due to the victim's screaming referred to an earlier occasion.

At the conclusion of the sentencing hearing, the trial judge made findings of fact from the bench and sentenced the Defendant accordingly. The trial court noted that the offense was a Class B felony with a range of eight to twelve years. The court found that the Defendant's "credibility [was] a real issue," and concluded the Defendant's explanation was "not credible testimony based on the injuries that this child presented with in the emergency room under the testimony of Dr. Qualls." The court found the Defendant both failed and refused to "accept appropriate responsibility for the severe injury that was caused to this baby." In setting the length of the sentence, the trial

---

[1] "A person commits the offense of aggravated child abuse or aggravated child neglect who commits the offense of child abuse or neglect as defined in § 39-15-401 and: The act of abuse or neglect results in serious bodily injury to the child." Tenn. Code Ann. § 39-15-402(a)(1). Tennessee Code Annotated section 39-15-401 states in relevant part: "Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits [the offense of child abuse]." As to the seriousness of the offense of aggravated child abuse, "if the abused or neglected child is six (6) years of age or less, the penalty is a Class A felony." Tenn. Code Ann. § 39-15-402(b).

[2] Under what is commonly termed an "Alford plea," a defendant is allowed to enter a plea of guilty when they believe it is in their best interest to accept a plea bargain, but while still professing innocence. See North Carolina v. Alford, 400 U.S. 25, 37 (1970). A Tennessee court has the discretion to accept an Alford plea only if there is a factual basis for the plea. See State v. William, 851 S.W.2d 828, 830 (Tenn. Crim. App. 1992).

[3] "Criminal attempt is an offense one (1) classification lower than the most serious crime attempted . . . ." Tenn. Code Ann. § 39-12-107(a).

court applied three enhancement factors: (1) injuries to the abused child resulted in permanent physical impairment; (2) the injuries would have resulted in death except for immediate medical treatment; and (3) the willful refusal of the Defendant to pay for his legal costs and fees. See Tenn. Code Ann. § 40-35-114(19), (20) and (22). The trial court considered but declined to apply the mitigating factors suggested by the Defendant. Based on its findings, the trial court sentenced the defendant to eleven years as a Range I offender to be served in the Tennessee Department of Correction.

The Defendant timely filed a notice of appeal. In order to fully and adequately address the sentencing issues raised on appeal, this Court ordered the Defendant to supplement the record on appeal with the transcript of his "best interest" guilty plea submission hearing, and to submit a supplemental brief addressing the sentencing issues in light of Blakely v. Washington, 124 S.Ct. 2531 (2004). The Defendant timely complied with this order.

## ANALYSIS

The Defendant asserts that the trial court erred in sentencing him to eleven years in the Department of Correction. Specifically, the Defendant claims the trial court should have applied two mitigating factors it declined to apply, should not have applied the three enhancement factors, and should have allowed an alternative sentence. We agree that the trial court erroneously applied three enhancement factors.

### I. Improper Application of Enhancement and Mitigation Factors

In calculating a sentence for a Class B felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class B felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The Sentence for a Class B felony as a Range I, standard offender is "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2). Therefore, the Defendant's presumptive sentence for his Class B felony conviction for attempted aggravated child abuse is the minimum in the range, or eight years. The Defendant argues his sentence was improperly enhanced to eleven years and not appropriately mitigated.

### A. Standard of review

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704

(Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

### B. Enhancement factors

The Defendant first argues that his sentence should not have been enhanced due to the fact that the "victim [of the crime of aggravated child abuse] suffered permanent impairment." because he pled guilty only to attempted aggravated child abuse, and one can not cause permanent injury through a mere "attempt" to commit aggravated child abuse. Tenn. Code Ann. § 40-35-114(19). The Defendant further argues that his sentence should not have been enhanced due to the fact that "lack of immediate medical treatment would have probably resulted in the death of the victim." because he pled guilty only to attempted aggravated child abuse, and because it was he who initiated the medical treatment the victim eventually received. Tenn. Code Ann. § 40-35-114(20). The Defendant also argues that his sentence was inappropriately enhanced for willful failure to pay court fees because he was indeed making a good-faith attempt to pay his fees. See Tenn. Code Ann. § 40-35-114(22). In his supplemental appellate brief, the Defendant raises the claim that he suffered a Sixth Amendment violation of his right to trial by jury when the court made findings of fact for sentencing enhancement purposes. We agree with the Defendant as to his final argument only.

We are compelled to address the Defendant's sentencing issues in light of the United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004), reh'g denied, 2004 WL 1872712 (U.S. Wash. Aug 23, 2004). In Blakely, the high court struck down a provision of the Washington state sentencing guidelines, quite similar to the one in Tennessee, that permitted the trial judge to impose an "exceptional sentence" after the court made a post-trial determination that certain statutory enhancement factors existed. The Supreme Court determined

that the protections in the Sixth Amendment to the federal Constitution would allow a defendant's sentence to be increased only if the enhancement factors relied upon by the judge were based on facts reflected in the jury verdict or admitted by the defendant. See id., 124 S.Ct. at 2537. The Court concluded that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 2543.

The Blakely decision calls into question the validity of Tennessee's sentencing statutes, insofar as they permit trial courts to increase a defendant's presumptive sentence based upon enhancement factors found by a trial judge as opposed to findings made by a jury. The Defendant now argues that he made no admissions related to the facts that formed the basis of the trial court's findings that his sentence should be enhanced. The Defendant further argues that because these findings were not made by a jury, the trial court abrogated his Sixth Amendment right to a jury trial and erred when it enhanced his sentence.

The State takes the position that the Blakely decision did not announce new law, but merely reached the logical conclusion dictated from the Supreme Court's prior decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). Thus, the State asserts, the Defendant should have earlier challenged his sentence under Apprendi, just as Mr. Blakely did, and his failure to do so in this case constituted a waiver of the issue.

We believe the State's waiver argument fails because, unlike in Mr. Blakely's situation, defendants in Tennessee were instructed by our highest court that Apprendi did not alter Tennessee trial courts' discretion to enhance sentences as long as they were within the range set by statute. See Graham v. State, 90 S.W.3d 687, 692 (Tenn. 2002). In 2000, the United States Supreme Court ruled in Apprendi that a criminal defendant is entitled to have "any fact (other than prior conviction) that increases the maximum penalty for a crime . . . submitted to the jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476. However, the Court also stated that "nothing in [the] history [of the common law] suggests that it is impermissible for judges to exercise discretion-- taking into consideration various factors relating both to offense and offender--in imposing a judgment within the range prescribed by statute." Id. at 481. In 2002, the Tennessee Supreme Court concluded that Apprendi provided a defendant no relief if they "received a sentence within the statutory maximum for each crime." Graham, 90 S.W.3d at 692 (citing Apprendi, 530 U.S. at 476). Graham was binding case law in Tennessee in October of 2003 when the Defendant received his enhanced sentence--although still within the range for a Class B felony.

In June of 2004, the United States Supreme Court revisited the Apprendi rule in Blakely v. Washington. In Blakely, a Washington trial court enhanced Mr. Blakely's sentence above the standard range assigned for his felony conviction because it found without aid of a jury that he had "acted with 'deliberate cruelty,'" a statutorily enumerated ground allowing departure from the standard range. Blakely, 124 S.Ct. at 2535. However, Mr. Blakely's sentence still fell within the maximum statutory range for his class of felony. Id. at 2537. The Supreme Court struck down the Washington sentencing law and clarified that the "statutory maximum" that formed the basis of the

Apprendi rule was "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id.

The Defendant did not have the advantage of Blakely's clarification of the Apprendi rule when his sentence was imposed. Had the Defendant challenged the enhancement of his sentence solely under Apprendi, as the State now suggests he should have done to avoid waiving the issue, his argument would have been quickly rejected by both Tennessee trial and appellate courts based on the clear rule outlined in the Tennessee Supreme Court's Graham decision. Thus, we find that in light of the existing case precedent at the time of the Defendant's sentencing, the Defendant cannot now be deemed to have waived his constitutional right to have a jury determine all the facts used to determine the length of his sentence. Therefore we will address the Defendant's claim that Blakely precluded the enhancement of his sentence.

The trial court made findings that enhancement factors (19), (20), and (22) applied to the Defendant and therefore enhanced the Defendant's sentence three years beyond the presumptive sentence. See Tenn. Code Ann. § 40-35-114(19), (20), and (22). It is clear that the Blakely rule precludes the application of these three enhancement factors if not determined by the jury or admitted by the Defendant. Because no enhancement factors were proved to a jury beyond a reasonable doubt or admitted by the Defendant, the sentence must be modified to the presumptive minimum of eight years.

While we find the Defendant did not waive a Blakely challenge to his enhanced sentence, we note that this Court could also have reached this issue as a matter of plain error even if the issue was forfeited. While maintaining the Defendant waived the issue, the State concedes that this Court may still address the Defendant's alleged constitutional violation as a matter of plain error. However, the State argues, any error in the case at hand is harmless beyond a reasonable doubt. We disagree.

Our rules provide that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b). This Court has previously held that in order for an error to be recognized as plain error it must both affect a "substantial right" and be "plain." State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). We have defined a "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense, and . . . constitutional in nature." Id. We also established five factors as a guide to determine whether an error is "plain":

   (a) the record must clearly establish what occurred in the trial court;
   (b) a clear and unequivocal rule of law must have been breached;
   (c) a substantial right of the accused must have been adversely affected;
   (d) the accused did not waive the issue for tactical reasons; and
   (e) consideration of the error is "necessary to do substantial justice."

Id. at 641-42.

There is no doubt that the Blakely issue affects a "substantial right" of the Defendant. As noted above, the United States Supreme Court declared that "every defendant has a right to insist that a prosecutor prove to a jury all facts legally essential to the punishment." Blakely, 542 S.Ct. at 2543. The Supreme Court further elaborated on the significance of this right by stating:

> Our commitment to Apprendi in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, the jury trial is meant to ensure their control in the judiciary.

Id. at 2538-39. Accordingly, we find that the Defendant's Sixth Amendment right to have a jury determine all facts legally essential to his punishment is unquestionably a right of fundamental proportions and constitutional in nature--the very hallmark of a "substantial right."

We also find that the error in the Defendant's sentence was "plain:" the record on appeal clearly established what occurred at the trial court; the now clear Apprendi-Blakely rule was breached; the Defendant did not waive this issue for "tactical reasons;" and as noted above, the error affected a "substantial right" of the Defendant and our consideration of this error is "necessary to do substantial justice," because justice requires that the Defendant's sentence be determined within constitutional mandates. Adkisson, 899 S.W.2d at 641-42. Accordingly, we find that the trial court's improper enhancement of the Defendant's sentence in violation of the Blakely rule amounted to plain error and must be reversed. Having established a plain error affecting a substantial constitutional right of the Defendant, harmless error analysis is precluded. See State v. Cleveland, 959 S.W.2d 548, 552 (Tenn. 1997). Therefore this Court also rejects the State's argument that any sentencing error was harmless beyond a reasonable doubt. Because Blakely precludes the application of the statutory enhancement factors, the Defendant's sentence must be modified to the presumptive sentence of eight years.

### C. Mitigation factors

The Defendant also argues that the trial court erred when it declined to apply two mitigating factors. A sentence cannot be mitigated below the statutory minimum for the appropriate range. See Tenn. Code Ann. § 40-35-210; State v. Smith, 910 S.W.2d 457, 460 (Tenn. Crim. App. 1995) (holding that trial courts may "reduce the sentence within the range as appropriate for mitigating factors") (emphasis added). We have held that the trial court's application of enhancement factors in calculating the Defendant's sentence constituted error. We therefore must modify his sentence to the statutory minimum of eight years; thus the Defendant's claim that the trial court erred in failing to apply mitigation factors is moot.

## II. Alternative Sentencing

Finally, the Defendant asserts that the trial court erred by denying probation or other alternative sentencing. Because we have modified the Defendant's sentence to eight years, it is our view that the case should be remanded to the trial court for the consideration of the Defendant's suitability for probation. The Defendant was originally sentenced to greater than eight years and, therefore, was not eligible for probation consideration. See Tenn. Code Ann. § 40-35-303(b). In consequence, the trial court did not consider his suitability, or lack thereof, for probation. Because the sentence must be modified to eight years under the Blakely rule, our law requires that probation must be considered as a sentencing option. See Tenn. Code Ann. § 40-35-303(b). This Court would point out, however, that the Defendant remains statutorily ineligible for community corrections because he has been convicted of a violent crime against the person. See Tenn. Code Ann. § 40-36-106(a)(3). In addition, the Defendant, as a Class B felony offender, is not entitled to a presumption in favor of alternative sentencing. See Tenn. Code Ann. § 40-35-102(6).

The conviction is affirmed. The sentence is modified to eight years. The cause is remanded to give the trial court the opportunity to consider the Defendant's suitability for probation.

_____
DAVID H. WELLES, JUDGE

-9-